# United States Court of Appeals
## For the First Circuit

No. 22-1137

HENRY DIAZ,

Plaintiff, Appellant,

v.

CITY OF SOMERVILLE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Jennifer C. Boal, U.S. Magistrate Judge]

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

James J. Heggie on brief for appellant.
Leonard H. Kesten, Michael Stefanilo, Jr., Deidre Brennan Regan, and Brody, Hardoon, Perkins & Kesten, LLP on brief for appellee.

February 1, 2023

**SELYA**, **Circuit Judge**. Police officers occupy positions of trust and authority and, thus, are understandably held to high standards of conduct. Notwithstanding those standards, plaintiff-appellant Henry Diaz, a police officer, contends that the City of Somerville (the City) wrongfully discharged him after he was involved in an off-duty altercation with a civilian and lied about the altercation during an internal investigation. Diaz, who is both Black and Hispanic, contends that his discharge was based on his race in violation of Title VII and Mass. Gen. Laws ch. 151B. The district court concluded that Diaz's contentions were unsupported and entered summary judgment in favor of the City. We affirm.

**I**

We draw the relevant facts from the summary judgment record, construing all disputed facts and reasonable inferences therefrom "in the light most flattering to the party against whom summary judgment was entered" (here, Diaz). Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 730 (1st Cir. 2022).

In the early morning hours of June 30, 2017, Diaz (an off-duty Somerville police officer) was driving through East Boston when he was forced to stop because a pedestrian stepped in front of his car. A confrontation ensued, during which Diaz got out of his car and repeatedly punched the pedestrian before driving away. The pedestrian reported the incident to the authorities in

East Boston but did not appear at the subsequent hearing on the matter. As a result, the case was dismissed without prejudice.

The Somerville Police Department was apprised of the incident and conducted its own internal investigation. During this investigation, Diaz maintained that he had merely defended himself out of fear for his own safety. Withal, the East Boston police report, a video of the incident, and witness interviews suggested otherwise. The Somerville Police Department investigation concluded that Diaz had been the aggressor and that the incident manifested conduct unbecoming an officer. That investigation also concluded that Diaz had not been truthful during the course of the probe. And after reviewing the report of the investigation, the City's police chief recommended disciplinary action up to and including dismissal.

In November of 2017, the City held a hearing to review the police department's findings and to present a disciplinary recommendation to the mayor. Diaz was given notice of the hearing and was represented by counsel. After considering evidence presented by both the police department and Diaz, the hearing officer concurred with the police department's findings and determined that just cause existed to terminate Diaz's employment. The mayor adopted the findings of the hearing officer and fired Diaz.

Diaz appealed the termination of his employment to the Massachusetts Civil Service Commission (the Commission). See Mass. Gen. Laws ch. 31, § 43. After three days of hearings, the Commission found, by a preponderance of the evidence, that Diaz had "engaged in substantial misconduct which adversely affect[ed] the public interest" and had violated departmental rules and regulations by engaging in conduct unbecoming an officer and by prevaricating during the investigation.

The Commission proceeded to consider whether those violations justified the City's decision to terminate Diaz's employment. Diaz argued that he, as a Black Hispanic officer, had been disciplined more severely than officers of other races who had committed similar, or worse, infractions. The Commission found, however, that the proffered comparators were distinguishable because the misconduct in those cases "was not as serious," the comparators themselves were "no longer employed as police officers," and/or those matters had been resolved through settlements.

The Commission went on to consider other potentially mitigating circumstances, including Diaz's previously unblemished disciplinary record and its own preference for progressive discipline. Even after taking those matters into account, though, the Commission concluded that "the seriousness of the misconduct here, which includes pummeling a private citizen who was not posing

- 4 -

a physical threat to Mr. Diaz, and then lying about the reasons for this misconduct, warrant termination." The Commission issued its final decision on April 11, 2019, upholding the termination of Diaz's employment as a police officer. Diaz did not seek judicial review of that decision and the appeal period has expired.

But even while the Commission's proceedings were still in progress, Diaz charted a parallel course. Just before the Commission's final hearing, he lodged a charge of discrimination with the Massachusetts Commission Against Discrimination (the MCAD). See Mass. Gen. Laws ch. 151B, § 5. In May of 2019, Diaz sued the City in a Massachusetts state court, alleging that he was discharged because of his race.[1] See 42 U.S.C. § 2000e-2(a)(1); Mass. Gen. Laws ch. 151B. The City removed the case to the United States District Court for the District of Massachusetts. See 28 U.S.C. § 1441. After some pretrial skirmishing and the expiration of the discovery period, the City moved for summary judgment.[2] See Fed. R. Civ. P. 56(a).

---

[1] Diaz did not receive a right-to-sue letter but filed his complaint more than ninety days after lodging his charge of discrimination with the MCAD. See Mass. Gen. Laws ch. 151B, § 9 ("Any person claiming to be aggrieved by a practice made unlawful under [chapter 151B], may, at the expiration of ninety days after the filing of a complaint with the commission, . . . bring a civil action for damages or injunctive relief or both in the superior . . . court for the county in which the alleged unlawful practice occurred . . . .").

[2] By consent of the parties, the case was heard and determined by a magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

The district court held that, for purposes of Diaz's chapter 151B claim, the Commission's unappealed decision precluded Diaz from relitigating the issues of whether the City had a legitimate reason for terminating his employment and whether he had been subject to disparate treatment.  And although the Title VII claim was not precluded by the Commission's decision, the district court determined that the comparators submitted by Diaz were insufficient to show that the City's stated reasons for termination were pretextual.

Based upon these rulings, the district court granted the City's motion for summary judgment.  This timely appeal followed.

**II**

We review a district court's entry of summary judgment de novo.  See Faiella v. Fed. Nat'l Mortg. Ass'n, 928 F.3d 141, 145 (1st Cir. 2019).  "In the course of that review, we take the facts in the light most hospitable to the nonmovant . . . and draw all reasonable inferences therefrom to that party's behoof." Gen. Hosp. Corp. v. Esoterix Genetic Lab'ys, LLC, 16 F.4th 304, 308 (1st Cir. 2021).

With this standard as our guide, we turn to Diaz's claims.  We start with his state-law claim and then address his federal claim.

**A**

Diaz's state-law claim is a disparate-treatment claim under Mass. Gen. Laws ch. 151B. That statute makes it unlawful for "an employer, by himself or his agent, because of []race [or] color, . . . to discharge from employment [an] individual." Mass. Gen. Laws ch. 151B, § 4(1). Massachusetts courts borrow from federal law and employ a framework similar — but not identical — to that established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when analyzing chapter 151B disparate-treatment claims in which there is no direct evidence of discrimination. See, e.g., Knight v. Avon Prods., Inc., 780 N.E.2d 1255, 1261 (Mass. 2003).

As is true in federal cases, the first step of the framework requires the plaintiff to establish a prima facie case by showing that "(1) he is a member of a [protected class]; (2) he performed his job at an acceptable level; [and] (3) he was terminated." Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 115 (Mass. 1995); see Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 32-33 (Mass. 2016). If the plaintiff successfully negotiates that step, the second step — which is the same under both federal and state law — comes into play. At that step, the burden of production shifts to the employer. There, the employer must articulate "a legitimate, nondiscriminatory reason for its [adverse] decision." Blare, 646 N.E.2d at 115.

- 7 -

So long as the employer makes this modest second-step showing, the burden reverts to the plaintiff. At this final step, the Massachusetts approach diverges from the classic McDonnell Douglas framework. Massachusetts is a "pretext only jurisdiction," where a plaintiff "need only present evidence from which a reasonable jury could infer that 'the [employer's] facially proper reasons given for its action against [him] were not the real reasons'" in order to survive summary judgment. Theidon v. Harvard Univ., 948 F.3d 477, 505 (1st Cir. 2020) (first alteration in original) (quoting Bulwer, 46 N.E.3d at 33). Thus, even though a plaintiff pressing a Title VII claim must at a minimum present evidence of animus — which may be done by demonstrating that the employer's stated reason for the adverse action is so "unworthy of credence" as to suggest animus, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) — a plaintiff pressing a chapter 151B claim need only present evidence that could create the inference that the employer's stated reason for the adverse action is not the real reason.[3] And that showing can be made by "demonstrat[ing] that similarly situated . . . employees were

---

[3] There is an additional difference. Unlike federal law, Massachusetts law places the burden of persuasion on the moving party (here, the City) throughout the framework. See Bulwer, 46 N.E.3d at 34; Sullivan v. Liberty Mut. Ins. Co., 825 N.E.2d 522, 529 (Mass. 2005).

- 8 -

treated differently."  Matthews v. Ocean Spray Cranberries, Inc.,
686 N.E.2d 1303, 1309-10 (Mass. 1997).

## 1

In the case at hand, the district court supportably determined — and the parties do not contest — that Diaz stated a prima facie case of discrimination.  The court went no further with respect to Diaz's chapter 151B claim because it concluded that the Commission's findings precluded Diaz from relitigating the issues of whether the City articulated a legitimate, nondiscriminatory justification for terminating his employment and whether he had been treated disparately in comparison to other similarly situated officers.  Testing this conclusion requires us to weigh the preclusive effect, if any, of the Commission's findings.[4]

"[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)); see Baez-Cruz v. Mun. of Comerio, 140 F.3d

---

[4] On appeal, Diaz contests the district court's determination only as to disparate treatment.

24, 28 (1st Cir. 1998). Consequently, we must look to Massachusetts law to determine what preclusive effect, if any, the Commission's decision has on Diaz's state-law claim. See Baez-Cruz, 140 F.3d at 28-29.

Under Massachusetts law, a previously litigated issue is precluded when

> "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication," was essential to the earlier judgment, and was actually litigated in the prior action.

Degiacomo v. City of Quincy, 63 N.E.3d 365, 369 (Mass. 2016) (quoting Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005)). If those conditions are satisfied, "[a] final order of an administrative agency in an adjudicatory proceeding, not appealed from and as to which the appeal period has expired, precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." Stowe v. Bologna, 610 N.E.2d 961, 963 (Mass. 1993) (alteration in original) (quoting Stowe v. Bologna, 592 N.E.2d 764, 766 (Mass. App. Ct. 1992)); see Alba v. Raytheon Co., 809 N.E.2d 516, 521-22 (Mass. 2004) (holding that issue preclusion estopped plaintiff from relitigating issues in chapter 151B claim

that were previously determined in unappealed administrative proceeding).

Diaz does not gainsay that the Commission's decision was a final adjudication on the merits and that he was a party to that proceeding. Nor does he dispute that the Commission's determination that he failed to identify comparators of sufficient similarity to show disparate treatment was actually litigated and was essential to the Commission's judgment. Instead, he asserts that the issue of disparate treatment raised before the Commission was not identical to the issue of disparate treatment presented to the district court through his chapter 151B claim. The difference, he says, is that the Commission was determining whether just cause existed for his firing, whereas the district court was being asked to adjudicate his claim of discrimination.

For present purposes, that is a distinction without a difference. Just as the City bore the burden of persuasion on the chapter 151B claim throughout the course of the modified McDonnell Douglas framework, so too it bore the burden of persuasion before the Commission. Massachusetts Ass'n of Minority L. Enf't Officers v. Abban, 748 N.E.2d 455, 461 (Mass. 2001). And the issue of whether Diaz had been treated differently than other similarly situated officers was essential to, and precisely the same in, both proceedings. The Commission examined the comparators offered by Diaz and determined that they failed to show that he had been

subjected to harsher discipline than others similarly situated because the proposed comparators were different in material respects. By offering comparators as his sole evidence of pretext, Diaz sought to relitigate that very same issue before the district court. The overlap between the issue of disparate treatment raised before the Commission and the issue of disparate treatment raised before the district court was "so substantial that preclusion [was] plainly appropriate." Comm'r of Dep't of Emp't & Training v. Dugan, 697 N.E.2d 533, 537 (Mass. 1998).

Diaz has another blade in his scabbard. He contends that he should not be precluded from relitigating the issue of disparate treatment because he offered additional comparators at summary judgment — comparators that had not been displayed before the Commission. That contention does not gain him any traction: "issue preclusion is premised on a party's prior opportunity to litigate an issue, not on whether the party made the best use of that opportunity." In re Goldstone, 839 N.E.2d 825, 833 (Mass. 2005). Diaz had a full and fair opportunity to litigate the issue of disparate treatment before the Commission; that he did so without presenting all the evidence available to him does not require that he be given a second bite at the cherry.

**2**

Diaz next assays a broader argument. He submits that the Commission lacked jurisdiction to adjudicate his

- 12 -

discrimination claim because he filed an MCAD complaint before the Commission issued its final decision. The filing of the complaint, he reasons, afforded the MCAD exclusive jurisdiction over his discrimination claim. In support, he cites Mass. Gen. Laws ch. 151B, § 9, which requires a plaintiff seeking to bring claims under chapter 151B first to satisfy the administrative requirement of filing a charge of discrimination with the MCAD. See Charland v. Muzi Motors, Inc., 631 N.E.2d 555, 557-58 (Mass. 1994). Section 9 further provides that once such a charge is filed, the administrative proceedings of the MCAD are "exclusive" as to any "acts declared unlawful" under chapter 151B and that "the final determination on the merits" of any such complaint "shall exclude any other civil action, based on the same grievance of the individual concerned." Mass. Gen. Laws ch. 151B, § 9.

But there is a rub. At no time did Diaz either raise this issue before the Commission or challenge the Commission's jurisdiction through an appeal in state court. Nor did Diaz advance this argument, face up and squarely, in the court below. Indeed, at oral argument on the motion for summary judgment in that court, Diaz's counsel stated that although the Commission typically abstains from addressing issues of racial discrimination, "they have jurisdiction where they could [address those issues]." Under these circumstances, we hold that the

- 13 -

argument has been waived.[5]  See Teamsters, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("[L]egal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

**3**

That ends this aspect of the matter.  We hold — as did the district court — that Diaz was precluded from relitigating, within the context of his chapter 151B claim, the issue of whether he had received disparate treatment compared to other similarly situated officers.  Because Diaz does not contend that he demonstrated pretext in some manner other than by offering comparators, he perforce has failed to carry his burden of producing evidence showing that the City's stated reasons for terminating him were pretextual.  It follows that the district court did not err in granting summary judgment for the City on Diaz's chapter 151B claim.

---

[5] In all events, Diaz fails to provide dispositive legal authority to bolster his interpretation of chapter 151B's exclusivity provision.  Although he argues that the Supreme Judicial Court's decision in Town of Brookline v. Alston, 167 N.E.3d 385 (Mass. 2021), stands for the proposition that a pending charge of discrimination before the MCAD divests the Commission of jurisdiction to consider conduct that might relate to a claim of discrimination, the court did not reach that issue in Alston — a case in which the MCAD proceeding had concluded several years before the plaintiff filed his civil service appeal.  See id. at 399; see also id. (stating that the Commission's consideration of "racist or retaliatory statements and acts" when determining whether just cause existed to discharge an employee "[did] not displace or undermine the purpose served by [chapter] 151B").

This brings us to Diaz's federal disparate-treatment claim. Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Federal law employs the classic McDonnell Douglas framework in Title VII cases in which the plaintiff does not offer direct evidence of discrimination. As indicated above, see supra Part II(A), this framework diverges from its Massachusetts counterpart at the third step. See Theidon, 948 F.3d at 505 n.39 (citing Bulwer, 46 N.E.3d at 33); see also Reeves, 560 U.S. at 147-48.

The district court determined that Diaz stated a prima facie case and that the City articulated a legitimate, nondiscriminatory justification for terminating his employment. For summary judgment purposes, then, Diaz's Title VII claim turns on whether he has made out a genuine issue of material fact regarding the third step of the framework: whether the City's stated reason for firing Diaz was pretextual and, in fact, motivated by some discriminatory animus. Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1995).

Once again, Diaz attempts to prove pretext by showing "that others similarly situated to him in all relevant respects were treated differently by" the City. Conward v. Cambridge Sch.

- 15 -

Comm., 171 F.3d 12, 20 (1st Cir. 1999). Unlike Diaz's state-law claim, though, his Title VII claim is not precluded by the Commission's unreviewed conclusions regarding comparator evidence. State administrative proceedings, not judicially reviewed, do not have preclusive effect with regard to Title VII claims. See Univ. of Tenn., 478 U.S. at 796. Thus, we train the lens of our inquiry on the proffered comparators.

When evaluating such comparators, "[r]easonableness is the touchstone: while the plaintiff's case and the comparison cases that he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." Conward, 171 F.3d at 20. As we have said,

> [t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared with apples.

Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriqueños En Acción v. Hernández, 367 F.3d 61, 64, 66-67 (1st Cir. 2004).

The district court determined that the comparators offered by Diaz were not sufficiently similar to show pretext

- 16 -

because the comparator incidents did not involve officers found both to have committed violent assaults and to have dissembled during the ensuing investigations. See Diaz v. City of Somerville, 583 F. Supp. 3d 296, 312 (D. Mass. 2022). Diaz assigns error and points to several comparator-officers who committed violent assaults yet were not discharged. He maintains, in essence, that comparator cases showing leniency for violent assaults, without any ensuing dishonesty, are sufficiently similar to demonstrate pretext. So, too, he maintains (at least by fair implication) that comparator cases depicting instances of untruthfulness, without any attendant violence, are adequate to carry his burden.

We do not agree. The egregiousness of Diaz's conduct and the City's stated reasons for his dismissal hinged on the combined force of both his assaultive conduct and his subsequent prevarication.[6] In other words, it was the combustible mixture of unrestrained aggression and unmitigated mendacity that separated this case from Diaz's proffered comparators. Removing an important ingredient of that mixture (say, untruthfulness about what happened or the presence of violence) renders any proposed comparison inappropriate. For a comparison to be apt, "apples

---

[6] Although Diaz suggests in passing that he was not untruthful, he fails either to develop that argument in his appellate briefing or to explain why we should take his violence-only cases as adequate comparators in light of that argument. We therefore deem any such challenge waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

should be compared with apples." Dartmouth Rev., 889 F.2d at 19. Diaz, however, invites us to compare apples with apricots. Consequently, the district court did not err in determining that proposed comparators lacking both the elements of aggression and mendacity were not similarly situated and, thus, that Diaz's proposed comparators were insufficient to ground a finding that the City's reasons for terminating him were pretextual.[7]

The absence of any evidence of pretext is fatal to Diaz's Title VII claim. See Conward, 171 F.3d at 22. Accordingly, we uphold the district court's entry of summary judgment on that claim.

## III

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

---

[7] The district court did address one comparator in which an officer was found both to have committed an assault and to have been untruthful. The court determined, though, that this incident was an inapt comparator because the officer did not "lie[] about the assault itself." Diaz, 583 F. Supp. 3d at 312 n.39. On appeal, Diaz neither mentions this incident in his brief nor challenges the district court's determination. We therefore deem any such challenge waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).