# United States Court of Appeals
## For the First Circuit

No. 23-1695

GLORIA COCUZZO,

Plaintiff, Appellant,

v.

TRADER JOE'S EAST INC.; JENNIFER GILLUM,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Montecalvo, Lipez, and Rikelman, Circuit Judges.

Timothy J. Perry, with whom Perry Krumsiek LLP was on brief,
for appellant.

Stephen T. Melnick, with whom Ellen E. Lemire and Littler
Mendelson, P.C. were on brief, for appellees.

November 15, 2024

**LIPEZ**, **Circuit Judge**.  In this employment discrimination action, Gloria Cocuzzo claims that she was terminated by her former employer of seventeen years, Trader Joe's East Inc. ("Trader Joe's"), and her former supervisor, Jennifer Gillum, because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B ("Chapter 151B").  The district court granted summary judgment in favor of the defendants, and Cocuzzo timely appealed.  After careful consideration, we affirm.

## I.

Because this is an appeal from the district court's entry of summary judgment, we consider the relevant facts in the light most favorable to Cocuzzo, the nonmoving party.  See Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 444 (1st Cir. 2009).

Trader Joe's is a national chain of specialty grocery stores.  Each Trader Joe's location is staffed by a "Captain," the manager in charge of the store; "Mates," assistant managers; "Crew Members," nonsupervisory staff; and sometimes "Merchants," specially designated members of the nonsupervisory staff.

Cocuzzo began working as a Crew Member at the Trader Joe's store in Brookline, Massachusetts, in 2003, when she was roughly sixty years old.  By all accounts, Cocuzzo was an exemplary employee, described by her supervisors in her annual performance

reviews as "outstanding," "a role model," and "a true neighborhood icon." In 2012, when she was nearly seventy years old, Cocuzzo was promoted to the role of Merchant by the then-Captain of her store. Cocuzzo also received regular pay increases throughout her employment.

Cocuzzo testified that Gillum, as Captain of the Brookline store, gave Cocuzzo her annual performance review in 2020 and that the review was positive. Additionally, Gillum approved a $1,200 performance bonus and a $1.00 per hour raise for Cocuzzo in August 2020, when Cocuzzo was seventy-seven years old.[1] Cocuzzo's performance in 2018 and 2019 was also evaluated as "excellent."

Because the Brookline Trader Joe's sells alcohol, all Crew Members -- including Cocuzzo -- were trained about selling alcohol and were subject to the store's alcohol policy. The alcohol policy for the Brookline Trader Joe's provides that "[n]o alcoholic beverage shall be sold to anyone who is under twenty-one (21) years of age or intoxicated" and specifies procedures for

---

[1] An inconsistency appears in the record regarding when Gillum became Captain of the Brookline Trader Joe's. In the combined statement of material facts submitted with their summary judgment briefing, the parties agreed that Gillum became Captain of the Brookline store in 2018. However, Gillum testified that she was promoted to Captain of a Trader Joe's store in 2018 but was not Captain of the Brookline Trader Joe's in 2018 or 2019. The record is clear, though, that Gillum was Captain of the Brookline Trader Joe's by August 2020.

verifying that a customer is at least twenty-one years old.  The policy further states that Trader Joe's employees have a "responsibility to comply with all Federal, State and the Town of Brookline's Laws."  Additionally, the store policy outlines disciplinary measures for violations as follows:

> **What is the disciplinary action for violating our Alcohol Policy?**
> Any Crew Member, Merchant, Mate, and/or Captain whose job performance or conduct violates our Alcohol Policy or is not in line with the company's standards will be subject to disciplinary action, which may range from a written warning to termination of employment.  Any violation of federal, the State of Massachusetts, local laws, and the Town of Brookline's By-Laws may result in a fine and/or suspension of your store's liquor license, as well as a fine to the Crew Member who made the sale.

On Saturday, February 20, 2021, Cocuzzo reported to the Brookline Trader Joe's for her usual 10 a.m. to 6:30 p.m. shift. Cocuzzo's grandson, Kevin Quinn, who was also an employee at that Trader Joe's store, reported for his shift starting at 4:30 p.m. At some point, Cocuzzo and Quinn went to the alcohol section of the store together, and Quinn selected beer from the shelf.  Quinn then handed the beer to Cocuzzo, and Cocuzzo purchased the beer. When asked during her deposition, "You purchased the beer for Mr. Quinn?" Cocuzzo responded, "Yes."  Quinn was born in July 2001, making him nineteen years old at the time.

Another Trader Joe's employee witnessed this transaction and reported it to Gillum. As Cocuzzo was on her way to put the beer in the refrigerator in the back of the store until she left, Gillum approached Cocuzzo and confronted her about the beer. Cocuzzo confirmed to Gillum that she had purchased the beer for Quinn. Cocuzzo recalled in her deposition that, during this conversation, Gillum "was addressing the fact that . . . the beer was for Kevin" and that Cocuzzo was "just so upset" because she "didn't think [she] was doing anything wrong." Following her conversation with Cocuzzo, Gillum contacted her regional vice president to discuss the incident. Gillum explained that an underage Crew Member had selected alcohol from the store and given it to Cocuzzo, who purchased the alcohol, and that Gillum was considering terminating Cocuzzo. The regional vice president agreed that termination was the only option.

Four days after the incident, on February 24, 2021, Gillum and one of the store's Mates, Brian Foote, met with Cocuzzo. In this meeting, Gillum told Cocuzzo that her decision to purchase beer for an underage individual "cross[ed] a line" and that her employment at Trader Joe's was ending.[2] Gillum gave Cocuzzo the

_____

[2] Gillum and Foote both composed notes on the day of the meeting with Cocuzzo documenting their conversation. Cocuzzo points out that Gillum's notes from this day refer to Cocuzzo's decision to "sell alcohol to a minor." Gillum testified that her use of the word "sell" was a typo and that she meant to write "purchase." Foote's notes state that the issue discussed during

- 5 -

option to resign or retire -- rather than be terminated -- so Cocuzzo "would have an opportunity to keep the narrative in her terms."  Cocuzzo chose to retire and left the store shortly thereafter.

Later that day, Cocuzzo sent Gillum an email that stated the following:

> I am putting this in writing to explain about my being fired from Trader Joe's after 16 years.  This termination was prompted by purchasing beer for my grandson, Kevin[,] who was coming to dinner that evening at my home. I totally did not think of his age!  Kevin does drink beer at home with his family[,] so I did not think twice about this transaction[.]  I've loved my job at Trader Joe's and therefore would do nothing to jeopardize my position.  I am saddened by this whole incident because I've valued my job. Trader Joe's is a fabulous company!

After receiving this email, Gillum changed Cocuzzo's retirement to a termination and asked Cocuzzo to sign a termination notice the following day, which Cocuzzo refused to do.  The termination notice, which was addressed to Cocuzzo, was signed by Gillum and a witness on February 25, 2021, and provided the following explanation for Cocuzzo's termination:

> Gloria, on February 20th, 2021, an underage crew member selected and placed two 4-packs of beer into a cart in the alcohol section of our store.  You proceeded to purchase this beer. When I asked you about the beer afterward, you

the meeting was Cocuzzo's decision to "purchas[e]" alcohol for an underage person.

- 6 -

said the alcohol was for the underage crew member.

The decision to purchase alcohol for a minor directly goes against our core value of integrity. Based on this decision, you[r] employment is terminated effective[] immediately.

At some point after the incident, Gillum questioned Quinn, Cocuzzo's grandson, about the circumstances of the beer purchase. Not long into that conversation, Quinn resigned. He was not disciplined by Trader Joe's for any involvement in the incident.

Claiming that she was terminated on account of her age, Cocuzzo filed this action against Trader Joe's and Gillum, alleging violations of the ADEA and Chapter 151B.[3] Trader Joe's and Gillum removed the action to federal court and, after discovery, moved for summary judgment on all claims. The district court granted that motion, and this appeal followed.

**II.**

Asserting an array of errors in the district court's application of the relevant legal framework, Cocuzzo argues that

---

[3] The district court held that the ADEA does not provide for suits against individuals and therefore construed Cocuzzo's ADEA claim as against only Trader Joe's. Cocuzzo v. Trader Joe's E. Inc., No. 22-CV-10162, 2023 WL 5613901, at *11 (D. Mass. July 28, 2023). Because Cocuzzo does not contend that this holding was error, we construe her ADEA claim the same way.

the court improperly granted summary judgment for Trader Joe's and Gillum.

## A. Standard of Review

We review de novo the district court's grant of summary judgment in favor of Trader Joe's. See Caruso v. Omni Hotels Mgmt. Corp., 61 F.4th 215, 220 (1st Cir. 2023). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A plaintiff opposing summary judgment "bears 'the burden of producing specific facts sufficient to'" defeat summary judgment. Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "While we resolve all reasonable inferences in favor of the [plaintiff], we must ignore conclusory allegations, improbable inferences, and unsupported speculation." Viscito v. Nat'l Plan. Corp., 34 F.4th 78, 83 (1st Cir. 2022) (quoting Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017)).

## B. Applicable Law

Because the analyses of age discrimination claims under the ADEA and Chapter 151B are "'substantially similar' in all relevant respects," the claims can be examined together using the framework applicable to ADEA claims. Adamson v. Walgreens Co., 750 F.3d 73, 83 (1st Cir. 2014) (quoting Bennett v. Saint-Gobain

Corp., 507 F.3d 23, 30 (1st Cir. 2007)). The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[4] Cocuzzo has not presented direct evidence of age discrimination, so we evaluate her age discrimination claims under the familiar three-stage burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 22-23 (1st Cir. 2015).

The first step of the McDonnell Douglas inquiry requires Cocuzzo to make out a prima facie case of employment discrimination. See Vélez, 585 F.3d at 447. To do so in the context of an ADEA claim for discriminatory termination, Cocuzzo must show that (1) she "was at least 40 years old at the time [s]he was fired," (2) she "was qualified for the position [s]he had held," (3) she "was fired," and (4) Trader Joe's "subsequently filled the position, demonstrating a continuing need for

---

[4] Chapter 151B makes it unlawful for "an employer in the private sector . . . because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." Mass. Gen. Laws ch. 151B, § 4(1B).

[Cocuzzo's] services." Id. If she makes out a prima facie case, Cocuzzo is entitled to a presumption of age-based discrimination, and the burden of production shifts to Trader Joe's "to articulate a legitimate, non-discriminatory reason for its decision[]." Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008).

If Trader Joe's articulates such a justification, Cocuzzo "must introduce sufficient evidence to support two findings: (1) that the employer's articulated reason [for the disciplinary action] . . . is a pretext, and (2) that the true reason is discriminatory."[5] Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 35 (1st Cir. 2012) (alteration and omission in original) (quoting Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1995)). "[I]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification." Theidon, 948 F.3d at 497 (quoting Vélez, 585 F.3d at 452). Instead, the plaintiff

_____

[5] "Massachusetts is a pretext only jurisdiction." Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 33 (Mass. 2016) (quoting Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 116 (Mass. 1995)). Thus, to survive summary judgment on her Chapter 151B claim, at the third step of the McDonnell Douglas inquiry, Cocuzzo "need only present evidence from which a reasonable jury could infer that '[Trader Joe's] facially proper reasons given for its action against h[er] were not the real reasons for that action.'" Id. (quoting Wheelock Coll. v. Mass. Comm'n Against Discrimination, 355 N.E.2d 309, 315 (Mass. 1976)). This difference between the ADEA and Chapter 151B frameworks does not impact the outcome here for the reasons we explain below. See infra Section II.C.

"must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." Id. (quoting Vélez, 585 F.3d at 452). Ultimately, it is Cocuzzo's burden to establish "that age was the 'but-for' cause of [Trader Joe's] adverse action." Vélez, 585 F.3d at 448 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)).

**C. Discussion**

**1. Age Discrimination Claims Against Trader Joe's under the ADEA and Chapter 151B**

Both parties assume that Cocuzzo has established a prima facie case of discrimination under the ADEA, so we proceed to the second step of the McDonnell Douglas analysis. Trader Joe's has articulated a legitimate, nondiscriminatory reason for its decision to terminate Cocuzzo -- namely, her knowing purchase of beer for an underage person in violation of Trader Joe's alcohol policy. Trader Joe's supports this assertion with admissible evidence from the record, including Cocuzzo's email to Gillum acknowledging that "[t]his termination was prompted by purchasing beer for my grandson, Kevin[,] who was coming to dinner that evening at my home," and the testimony of Gillum, her regional vice president, and Foote, who was present during Gillum's meeting with Cocuzzo. Thus, Trader Joe's has carried its burden on step

- 11 -

two, and we move to the third and last step of the <u>McDonnell Douglas</u> framework.[6]

Cocuzzo argues that she has raised a genuine issue of material fact in several ways as to whether Trader Joe's stated reason for her termination was a pretext to conceal discriminatory animus.  See <u>Espinal</u>, 693 F.3d at 35.  We address each in turn.

### (a) Violation of Law or Policy

Cocuzzo first argues that Trader Joe's proffered rationale for her termination was a mere pretext because she did not, in fact, violate the Brookline store's alcohol policy or Massachusetts law.  As to the former, she asserts that the alcohol policy prohibits only "the sale or service of alcohol" to an

---

[6] Cocuzzo contends that Trader Joe's has failed to articulate a legitimate reason for her termination because her conduct did not violate the store's alcohol policy or Massachusetts law, so Trader Joe's could not have based its decision on any such purported violations.  However, to carry its burden of production on the second step of the <u>McDonnell Douglas</u> inquiry, Trader Joe's needs only to proffer a legitimate, nondiscriminatory reason for its decision.  "If the 'employer's proffered reason is facially adequate to constitute a legitimate, nondiscriminatory justification for the employer's actions,' then the 'presumption arising from a discrimination plaintiff's prima facie case vanishes.'"  <u>Dusel</u> v. <u>Factory Mut. Ins. Co.</u>, 52 F.4th 495, 506 (1st Cir. 2022) (quoting <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 824-25 (1st Cir. 1991)).  As explained above, Trader Joe's has carried its burden.  Cocuzzo's contention that her conduct did not violate policy or law is more properly understood as an argument that Trader Joe's articulated reason for its decision was pretextual, as presented and analyzed in the following section.  See <u>infra</u> Section II.C.1(a); <u>see</u> <u>also</u>, e.g., <u>Bennett</u>, 507 F.3d at 31-32 (addressing under third step of <u>McDonnell Douglas</u> inquiry argument that ADEA plaintiff did not actually engage in misconduct).

underage person -- not the purchase of alcohol for an underage person. Regarding the latter, she cites a provision of a Massachusetts statute that permits one's "grandchildren . . . to possess alcoholic beverages on premises or property owned or controlled by" the grandparent. Mass. Gen. Laws ch. 138, § 34. Reasoning that her decision to purchase beer for her grandson was not explicitly prohibited, Cocuzzo contends it "could not have been a legitimate reason to terminate her." For its part, Trader Joe's disputes Cocuzzo's interpretation of the Massachusetts statute and the store's alcohol policy, asserting that Cocuzzo's conduct violated both. And it avers that, in any event, "whether Cocuzzo actually violated the law or not is immaterial."

We agree with Trader Joe's that whether Cocuzzo contravened its alcohol policy or state law "is largely beside the point." Bennett, 507 F.3d at 31. That is because, in assessing the pretextual nature of the proffered reason for Cocuzzo's termination, "[o]ur task is limited to determining whether the employer 'believe[d] in the accuracy of the reason given.'" Espinal, 693 F.3d at 35 (second alteration in original) (quoting Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 67 (1st Cir. 2008)); see also Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 48 (1st Cir. 2019) ("[T]he factfinding inquiry at the pretext stage of the ADEA burden-shifting framework 'focuses on "whether the employer believed its stated reason to be credible,"' and not

- 13 -

on whether the employer was right." (quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1093 (1st Cir. 1995))). Thus, "it is not enough for [Cocuzzo] to show that the decisionmaker acted on an incorrect perception" of the law or the specific terms of Trader Joe's alcohol policy -- she must also show that the decisionmaker did not think the proffered interpretation was correct. Kouvchinov, 537 F.3d at 67.

Cocuzzo has identified no evidence that would allow a factfinder to conclude that Trader Joe's "did not believe in the accuracy of the reason given for" her termination. Id. On the contrary, there is ample support in the record that, at the time of the termination, Trader Joe's understood Cocuzzo to have violated Massachusetts law and store policy by purchasing alcohol for an underage individual. For example, Gillum testified to this belief repeatedly. Cocuzzo attempts on appeal to discredit Gillum's testimony, asserting that it "rings hollow and lacks credibility" because, as a manager, Gillum was responsible for training other employees on relevant liquor laws and therefore must have been familiar with them. But as Trader Joe's points out, the record, including Cocuzzo's deposition testimony, shows that a third party -- not Gillum -- conducted the store's alcohol trainings. Thus, Cocuzzo's argument has no factual basis.[7]

---

[7] Cocuzzo relatedly asserts that Gillum could not have believed Cocuzzo violated the law because Gillum "received

- 14 -

Hence, she has failed to create a triable issue of fact as to whether Trader Joe's believed its stated reason for her termination, and her charge of pretext on that basis fails.

**(b) Disparate Treatment**

Second, Cocuzzo attempts to carry her burden to show pretext and animus based on evidence that Trader Joe's treated her differently than other similarly situated employees. Certainly, "[a]n employer's disparate treatment of employees in response to behavior that legitimately offends the employer can provide evidence of discriminatory animus." Vélez, 585 F.3d at 451. However, "to be probative of discriminat[ion], a claim of disparate treatment 'must rest on proof that the proposed analogue is similarly situated in material respects.'" Id. (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 752 (1st Cir. 1996)). That is, Cocuzzo must identify comparators who "closely resemble" her with "respect to relevant facts and circumstances." Diaz v. City of Somerville, 59 F.4th 24, 32 (1st Cir. 2023) (quoting Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999)). If we conclude that a reasonable jury could not find that she has done so, then her assertion of pretext based on disparate treatment

_____

training on selling alcohol." Even assuming Cocuzzo properly raised this argument in the district court, which Trader Joe's disputes, we do not see how the fact of Gillum's alcohol sales training negates her consistent testimony as to her belief that Cocuzzo's conduct contravened the Brookline store's alcohol policy and the law.

- 15 -

cannot stand. See, e.g., Conward, 171 F.3d at 20-22 (rejecting discrimination claim based on disparate treatment after concluding comparators could not be considered "similarly situated . . . in all relevant respects").[8]

None of the individuals Cocuzzo identifies are true "apples to apples" comparators such that their dissimilar treatment could support an inference of discrimination. See González-Bermúdez v. Abbott Lab'ys P.R. Inc., 990 F.3d 37, 44 (1st Cir. 2021). Cocuzzo points to six employees under age forty who violated Trader Joe's alcohol policy and received written warnings rather than terminations. Of those six individuals, five were written up for neglecting to check the identification of underage customers attempting to buy alcohol, and Cocuzzo offers no evidence that these employees knew that the customers were

_____

[8] Some of our past decisions have been imprecise, suggesting that the aptness of proposed comparators in this context is a question of law for a court. See, e.g., Diaz, 59 F.4th at 32-33; Dusel, 52 F.4th at 506-07; Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 27 (1st Cir. 2015). However, as we have made clear in other decisions, this question is one of fact for the factfinder. See, e.g., Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 145 (1st Cir. 2012) ("[Plaintiff] has presented sufficient evidence to allow a jury to decide whether the incidents were similar enough to support his allegation of disparate treatment."); Vélez, 585 F.3d at 452 (finding summary judgment on ADEA claim inappropriate where "plaintiff has made a showing that the situations of other employees are 'fair congeners'" (quoting Perkins, 78 F.3d at 751)). Thus, on appeal from an entry of summary judgment, we will hold that a plaintiff bringing a discrimination claim is not similarly situated to the proposed comparators as a matter of law only if a reasonable jury could not conclude otherwise.

underage. By contrast, Cocuzzo concedes that she purchased alcohol for an individual she knew to be nineteen years old -- a distinction that is sufficiently significant that comparing the five proffered employees to Cocuzzo would be inapt. See Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 506 (1st Cir. 2022) (rejecting pretext argument where comparator "was not implicated in the same misconduct that forms the basis of [employer's] articulated rationale for [plaintiff's] termination"); Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 27 (1st Cir. 2015) (holding plaintiff and comparator could not be considered "similarly situated" where comparator "was suspected of drug use, while [plaintiff] was suspected of drug diversion," i.e., tampering with or stealing drugs); Matthews v. Ocean Spray Cranberries, Inc., 686 N.E.2d 1303, 1311 (Mass. 1997) (distinguishing plaintiff's knowing violation of company rule from proffered comparators' misunderstanding of rule in finding no pretext based on disparate treatment).

The sixth comparator, who was issued a warning for selling a bottle of vodka to an underage Crew Member, is a closer analog. However, as the parties acknowledged at oral argument, the record is unclear as to whether the employee, identified in the record as "J.D.," knew the Crew Member was underage. But assuming favorably to Cocuzzo that the sale was made knowingly, as we must, see Viscito, 34 F.4th at 83, the record reveals a

"differentiating or mitigating circumstance[]" that otherwise distinguishes J.D.'s conduct from Cocuzzo's, Fincher v. Town of Brookline, 26 F.4th 479, 486 (1st Cir. 2022) (quoting Smith v. Stratus Comput. Inc., 40 F.3d 11, 17 (1st Cir. 1994)). Specifically, J.D. brought the illegal sale "to the [at]tention of a [supervisor] immediately after," which Trader Joe's determined was "commendable." Although Cocuzzo argues that she "did precisely the same thing," the record shows that she disclosed her alcohol purchase only once confronted by Gillum. We cannot say that the distinction between affirmatively self-reporting an infraction and admitting to the underlying facts in response to a supervisor's questioning while resisting the idea that the conduct could be wrongful is inconsequential. Therefore, we are unpersuaded that a reasonable factfinder could conclude Cocuzzo's proffered comparators are "substantially similar . . . 'in all relevant aspects.'" Dusel, 52 F.4th at 507 (quoting Trs. of Health & Hosps. of Bos., Inc. v. Mass. Comm'n Against Discrimination, 871 N.E.2d 444, 450 (Mass. 2007)). Accordingly, her assertion of discrimination based on disparate treatment fails.

### (c) Shifting Explanations

Third, Cocuzzo points to what she characterizes as "substantial[]" variation in Trader Joe's stated reasons for her termination as evidence of pretext and animus. She asserts that Trader Joe's rationale changed from (1) Cocuzzo's violation of

- 18 -

Trader Joe's "core value of integrity"[9] to (2) her violation of Trader Joe's alcohol policy to (3) her violation of the store's alcohol policy and Massachusetts law, then back to (4) her violation of the alcohol policy, then again to (5) her violation of the alcohol policy and state law, and finally, back to (6) her alcohol policy violation.[10] Cocuzzo asserts that the fact that Trader Joe's provided "different reasons" for its action at "different times . . . surely supports a finding that the reason it ultimately settled on was fabricated." Vélez, 585 F.3d at 449.

Contrary to Cocuzzo's contention, however, Trader Joe's has never wavered from the core explanation for its action: Cocuzzo's knowing purchase of alcohol for an underage individual. As the district court explained, the various rationales Cocuzzo identifies "are grounded on and follow obviously from" that "core" reason. Cocuzzo v. Trader Joe's E. Inc., No. 22-CV-10162, 2023 WL 5613901, at *8 (D. Mass. July 28, 2023). They certainly do not

---

[9] As described above, Cocuzzo's termination notice reads: "The decision to purchase alcohol for a minor directly goes against our core value of integrity. Based on this decision, you[r] employment is terminated effective[] immediately."

[10] Cocuzzo also points to Gillum's meeting notes referring to Cocuzzo's decision "to sell alcohol to a minor" as an additional inconsistency in Trader Joe's stated rationales. See supra note 2. We agree with the district court that "no evidence suggests that the use of the word 'sell' rather than 'purchase' was anything other than a typo" and, "[t]hus, no reasonable jury could consider this note referencing selling alcohol to a minor as an 'inconsistency,' especially not one suggestive of pretext." Cocuzzo, 2023 WL 5613901, at *8 n.9.

- 19 -

amount to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . that a reasonable factfinder could rationally find" Trader Joe's proffered reason for Cocuzzo's termination "unworthy of credence."  Adamson, 750 F.3d at 79 (quoting Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010)); see also Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 94 (1st Cir. 2014) (concluding no basis existed for finding of pretext where employer's "general rationale . . . and the more specific ones noted in later documents . . . are not inconsistent").  Consequently, Cocuzzo has not raised a genuine dispute of fact as to pretext or animus based on Trader Joe's supposed "shifting reasoning."

### (d) Performance Reviews

Fourth, Cocuzzo avers that the fact that her performance evaluations for 2018, 2019, and 2020 were entered into Trader Joe's computer system on the same date -- August 20, 2021 -- is evidence of pretext and discriminatory animus.  Specifically, Cocuzzo contends that Gillum "belatedly massage[d]" her reviews "to fit the narrative that Ms. Gillum 'liked Ms. Cocuzzo' but had no choice but to terminate her."  This assertion is unfounded.  Regardless of when it was entered into Trader Joe's computer system, both Gillum and Cocuzzo testified that Cocuzzo received a "positive" review from Gillum in 2020, when Cocuzzo was in her late seventies,

- 20 -

along with a raise and a bonus.[11]  This 2020 review was consistent with Cocuzzo's exceedingly positive evaluations throughout her employment at Trader Joe's, which began when Cocuzzo was around sixty years old.  Cocuzzo points to nothing in the record that would allow a rational trier of fact to conclude, as she contends, that Gillum acted "[s]urreptitious[ly]" to "cover" her age-based discriminatory animus.

### (e) "Retire" Comment

Fifth, Cocuzzo contends that she has carried her burden on the third McDonnell Douglas step because "Gillum attempted to coerce" her "into retiring based upon her age."  In support of this assertion, Cocuzzo points to Gillum's statement during the February 24, 2021, meeting that she would give Cocuzzo "the opportunity to retire . . . to 'keep the narrative on [Cocuzzo's] own terms.'"  This comment "aimed at an elder employee," Cocuzzo says, "constitutes evidence of discrimination."

To the extent Cocuzzo argues that an employer's mere use of the word "retire," without more, can support a finding of pretext or discriminatory animus, we disagree.  See Gonzalez v.

---

[11] Gillum testified that the delay in entering the 2020 review was due to "an error in the program the year [she] tried to write [Cocuzzo's] review."  Moreover, as described above, it appears that Gillum may not have been Captain of the Brookline Trader Joe's in 2018 or 2019 and thus would not have been responsible for reviewing Cocuzzo's performance during those years.  See supra note 1.

- 21 -

El Dia, Inc., 304 F.3d 63, 71 (1st Cir. 2002) ("Of course the mere tender of a retirement proposal does not evince the requisite discriminatory animus."). Moreover, when viewed in the light most favorable to Cocuzzo, the context of Gillum's statement still makes clear it cannot be understood as an attempt to "coerce" Cocuzzo into retiring due to her age. The offer for Cocuzzo to retire was made during a meeting shortly after Cocuzzo admitted to knowingly purchasing alcohol for an underage individual and was presented as an alternative to the termination that Cocuzzo was told would otherwise occur. The only reasonable inference from those circumstances is that Cocuzzo, a long-term employee eligible for retirement, was given the opportunity to leave without any blemish on her record. See Palmer v. Liberty Univ., Inc., 72 F.4th 52, 65 (4th Cir. 2023) (noting that "the retirement comments emphasized here were made after the [employer] had concluded that [the plaintiff] was not meeting . . . expectations" in affirming grant of summary judgment for employer on ADEA claim); Kaniff v. Allstate Ins. Co., 121 F.3d 258, 263 (7th Cir. 1997) ("It appears, in fact, that the possibility of retirement was raised by [the employer] only in order to spare [the plaintiff] the embarrassment of being terminated for dishonesty.").[12] Because a rational factfinder

---

[12] As the district court noted, Cocuzzo supports her "retirement" argument with cases that are easily distinguishable because they involve statements that directly suggested discriminatory animus. See Zampierollo-Rheinfeldt v. Ingersoll-

- 22 -

could not find animus in Gillum's offer of retirement, Cocuzzo's assertion of discrimination based on Gillum's comment fails.

### (f) Spreadsheet

Sixth and finally, Cocuzzo avers that a spreadsheet produced by Trader Joe's during discovery supports her discrimination claim. According to Cocuzzo, the spreadsheet shows that in the ten years prior to Gillum's promotion to Captain, no employee over the age of forty separated from Trader Joe's, but after Gillum's promotion, seven employees over forty "were suddenly separated from employment."[13] Certainly, if the spreadsheet produced by Trader Joe's showed the disparity Cocuzzo claims, that might be probative of discrimination. But it plainly does not. Rather, as Trader Joe's explained in its written discovery responses, the spreadsheet appears to list all individuals employed as of the date of Cocuzzo's termination -- February 25, 2021 -- along with their dates of birth and dates of separation, if applicable. Necessarily, every separation date for

_____

Rand de P.R., Inc., 999 F.3d 37, 52 (1st Cir. 2021) (finding statements that employer "wanted to 'rejuvenate' the team/management/region" provided direct evidence of age discrimination); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 171 (1st Cir. 1998) (citing with approval Seventh Circuit decision holding that a supervisor's comment "that the plaintiff's 'accounts could use some younger blood' constituted sufficient direct evidence of discriminatory intent" (quoting EEOC v. G-K-G, Inc., 39 F.3d 740, 746 (7th Cir. 1994))).

[13] It is not clear how Cocuzzo came up with this ten-year timeframe, which does not appear in the spreadsheet.

- 23 -

these employees is on or after February 25, 2021.  In other words, the spreadsheet does not indicate that any employees over forty separated from Trader Joe's before Gillum became Captain simply because it does not list <u>any</u> employees who separated prior to February 2021.  Accordingly, we agree with Trader Joe's that the "spreadsheet has no conceivable relevance" to Cocuzzo's age discrimination claims and certainly does not support a finding of pretext or animus.[14]

In sum, Cocuzzo has failed to identify any minimally sufficient evidence to support a finding of pretext or discriminatory animus.  Therefore, the district court properly granted summary judgment for Trader Joe's on Cocuzzo's claims under the ADEA and Chapter 151B.

## 2. Derivative Claim Against Gillum under Chapter 151B

Cocuzzo also asserts that the district court erred in dismissing her state law claim against Gillum as an individual. Massachusetts law makes it unlawful for any person to interfere with another's right to employment free of discrimination.  Mass. Gen. Laws ch. 151B, § 4(4A).  To prevail on a claim of interference under section 4(4A), Cocuzzo must show that Gillum "'interfered

---

[14] Cocuzzo points out that the district court "made no comment" on the spreadsheet in its decision granting summary judgment in favor of Trader Joe's.  In our view, the spreadsheet is so clearly irrelevant that we cannot fault the district court for declining to discuss it.

with [her] rights in deliberate disregard of those rights,' which requires a showing of 'an intent to discriminate.'" <u>Coogan</u> v. <u>FMR, LLC</u>, No. 15-CV-13148, 2018 WL 4405614, at *10 (D. Mass. Sept. 17, 2018) (quoting <u>Furtado</u> v. <u>Standard Parking Corp.</u>, 820 F. Supp. 2d 261, 278-79 (D. Mass. 2011)); <u>see</u> <u>also</u> <u>Ring</u> v. <u>SRS Distrib.,</u> <u>Inc.</u>, No. 19-CV-10896, 2021 WL 3036877, at *6 (D. Mass. July 19, 2021) ("A claim under Section 4(4A), however, is 'derivative of the underlying age discrimination claim and thus fails as a matter of law where the court has concluded there was no age discrimination.'" (quoting <u>Coogan</u>, 2018 WL 4405614, at *11)). For the reasons we have described, Cocuzzo has not made the requisite showing. Accordingly, we affirm the district court's decision granting summary judgment for Gillum on Cocuzzo's state law claim.

## III.

For the reasons stated herein, we affirm the decision of the district court.

<u>So ordered</u>.