# United States Court of Appeals
## For the First Circuit

No. 23-1667

CHARLES BOYKIN,

Plaintiff, Appellant,

v.

GENZYME THERAPEUTIC PRODUCTS, LP and PAUL BEAUSOLEIL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

Mitchell J. Notis and Law Office of Mitchell J. Notis on brief
for appellant.
Christopher B. Kaczmarek and Littler Mendelson, P.C. on brief
for appellees.

February 16, 2024

**SELYA**, **Circuit Judge**.   Plaintiff-appellant Charles Boykin brought an employment-discrimination action against his quondam employer, Genzyme Therapeutic Products, LP (Genzyme), and one of its executives.  Concluding that the plaintiff's allegations of discrimination lacked an appropriate factual predicate, the district court granted summary judgment in favor of the defendants. The plaintiff appeals.  After careful consideration, we affirm.

## I

We briefly rehearse the relevant facts and travel of the case.  We draw our account from the summary judgment record.[1]  See Mancini v. City of Providence, 909 F.3d 32, 37 (1st Cir. 2018). In the process, we construe the facts in the light most flattering to the party against whom summary judgment entered (here, the plaintiff).  See id.  Relatedly, we draw all reasonable inferences to that party's behoof.  See id.

The plaintiff — an African-American male — began working as a manufacturing supervisor for Genzyme in 2013.  After some time, he was promoted to the position of senior site planning

---

[1] We note that — before the district court — the defendants moved to strike the plaintiff's statement of material facts.  See D. Mass. R. 56.1.  The district court allowed the motion "to the extent that any fact in [the plaintiff's statement of material facts] is inconsistent with the facts set forth in defendants' statement (which are deemed admitted given [the plaintiff's] failure to dispute the relevant paragraphs in his statement)." Boykin v. Genzyme Therapeutic Prods. LP, No. 21-10115, 2023 WL 4493514, at *1 n.1 (D. Mass. July 12, 2023).  This ruling has not been challenged on appeal, and we do not discuss it further.

analyst at Genzyme's Allston, Massachusetts facility.  In this role, he managed the cycle-count process at the Allston facility and was responsible for investigating deviations from the company's standard manufacturing processes at that site.  The plaintiff's direct manager was Michael Haepers, and Haepers's superior was defendant-appellee Paul Beausoleil.

In 2017, issues surfaced relating to the plaintiff's job performance.  At different points in that year, Haepers and Beausoleil separately expressed concerns to the plaintiff about the pace at which he was resolving deviation investigations.  And on one occasion, Sebastian Bernhard, the head of finance at the Allston facility, publicly criticized the plaintiff when Genzyme failed an external cycle-count audit conducted by PricewaterhouseCoopers.  The plaintiff later reported Bernhard to Genzyme's human resources administrators for alleged racial discrimination, after which Bernhard apologized to the plaintiff.

In the winter of 2017 — while the plaintiff was mopping up ice melt in the facility — Beausoleil allegedly told another employee that "we finally have a job he [the plaintiff] can handle."  The plaintiff and a co-worker, both of whom overheard this remark, regarded it as expressing a racial stereotype.

As the end of 2017 approached, Haepers and Beausoleil communicated about the plaintiff's end-of-year review.  In a December 5 email, Haepers recommended that the plaintiff be given

a rating of 3 on Genzyme's 9-block performance matrix. Although the plaintiff had a "positive attitude and is always willing to take on extra work or projects," Haepers explained, he also had a tendency to "lose focus at times, especially as the process owner for cycle counting." Haepers emphasized that the plaintiff "needs [to] focus on his basic tasks (cycling counting and deviation management)." Beausoleil responded, instructing Haepers to enter the proposed rating into Genzyme's system but not to communicate this rating to the plaintiff before it was finalized.

On March 20, 2018 — after the rating was finalized — Haepers informed the plaintiff of it. Haepers told the plaintiff that he initially gave him a rating of 5, but that Beausoleil instructed him to reduce it to a 3. When the plaintiff asked why Beausoleil lowered his rating, Haepers allegedly stated that Beausoleil believed that the plaintiff was "making too much money." In addition to rendering the plaintiff ineligible for a salary increase and a bonus, the 3 rating required him to enter into an Individual Improvement Plan. But before the plaintiff received any such plan, he requested and received a medical leave of absence. He never returned to work at Genzyme.

On January 22, 2021, the plaintiff sued Genzyme and Beausoleil in the United States District Court for the District of Massachusetts. His complaint alleged that the defendants engaged in unlawful racial discrimination, racial harassment, and

retaliation in violation of the Civil Rights Act of 1866 (counts 1 and 2), 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (count 3), 42 U.S.C. §§ 2000e-2000e17, and the employment discrimination provisions of Massachusetts law (counts 4 and 5), Mass. Gen. Laws ch. 151B, § 4.

Following the completion of discovery, the defendants moved for summary judgment. See Fed. R. Civ. P. 56(a). Although the plaintiff opposed the motion, the district court granted it. See Boykin v. Genzyme Therapeutic Prods. LP, No. 21-10115, 2023 WL 4493514, at *4 (D. Mass. July 12, 2023). Applying the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), the district court concluded that, even if the plaintiff had endured a prima facie case of discrimination, Genzyme had established a legitimate and nondiscriminatory rationale for the adverse employment action. See Boykin, 2023 WL 4493514, at *3. Moreover, the plaintiff had not offered any sufficient proof that this rationale was pretextual. See id. So, too, the district court found the plaintiff's retaliation claim wanting because the plaintiff had failed to proffer evidence sufficient to demonstrate "a causal connection between the alleged protected conduct (filing a complaint against Bernhard for racial discrimination) and the adverse action (the poor performance review by Beausoleil)." Id.

This timely appeal ensued.

In this venue, the plaintiff challenges only the district court's entry of summary judgment on his discrimination claims.[2] We review the district court's entry of summary judgment de novo.  See Mancini, 909 F.3d at 38.

To prevail on summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009).  The summary judgment ritual is standard fare:  once the movant "adumbrate[s] 'an absence of evidence to support the nonmoving party's case,'" Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)), the burden shifts to the nonmovant to establish the existence of a genuine issue of material fact, see id.  To carry this burden, the nonmovant cannot simply rely on evidence that is "conjectural or problematic," Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989), but, rather, "must present definite, competent evidence," Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).

---

[2] The plaintiff does not raise objections to the district court's grant of summary judgment on his retaliation claim.  Any such objections are thus deemed waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

In disparate-treatment cases — like this one — in which the plaintiff proffers no direct evidence of discrimination, "we allocate the burden of producing evidence according to the now-familiar three-step framework set forth in McDonnell Douglas Corp. v. Green." Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995). Under this tripartite framework, the plaintiff must first make out a prima facie showing of discrimination. See id. Once that showing is made, the burden of production shifts to the defendant, who must provide a legitimate, nondiscriminatory justification for the adverse employment action. See id. If the defendant puts forth such a justification, the burden of production reverts to the plaintiff, "who is given an opportunity to show that the defendant's stated reason for [the adverse employment action] was a pretext for discrimination." Id. Throughout, "[t]he ultimate burden of persuasion always remains on the plaintiff." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012).

Before us, the plaintiff argues that the district court incorrectly applied this formulation in two ways.[3] To begin, he claims that the court mistakenly declined to decide whether he had

---

[3] Although the plaintiff advances claims under both Title VII and Massachusetts state law, neither he nor the defendants argue that the two claims should be treated differently. Given that the federal and state standards do not meaningfully differ in the present application, we address these claims together. See Ponte v. Steelcase Inc., 741 F.3d 310, 319 n.9 (1st Cir. 2014); Villanueva v. Wellesley Coll., 930 F.2d 124, 127 n.2 (1st Cir. 1991).

established a prima facie case of discrimination and instead engaged in "erroneous speculation." Next, he claims that the court incorrectly determined that the plaintiff failed to establish that "the supposedly legitimate nondiscriminatory reason for the performance review[] was simply a pretext." We do not agree with either of the plaintiff's arguments.

We turn first to the plaintiff's main assignment of error. There is no rule of practice or procedure that stops courts from deferring judgment on the intricacies of establishing whether there was a prima facie case of discrimination when it is apparent that the plaintiff cannot prevail at the third step of the McDonnell Douglas inquiry. See, e.g., Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 35 (1st Cir. 2012) (bypassing first two steps of McDonnell Douglas framework and proceeding directly to third step). Inasmuch as this case raises at least one unresolved question concerning whether a negative performance review constitutes an adverse employment action necessary to the establishment of a prima facie case of discrimination, we think that the district court wisely decided to leave this matter for another day.

With respect to the plaintiff's remaining assignment of error, we echo the district court's determination that the plaintiff failed to establish that there was a genuine issue of material fact as to whether Beausoleil's proffered reason for the

performance review was merely pretext. To be sure, the plaintiff insists that the evidence at hand establishes a genuine issue of material fact on this question. At the crux of his argument, though, stands Haepers's statements upon informing the plaintiff that he received a rating of 3. On the plaintiff's account, we must take Haepers's statement that he had initially given the plaintiff a rating of 5 and only lowered it to a 3 at the direction of Beausoleil as true. After all, it is incumbent that we view the evidence that Haepers initially suggested to Beausoleil that the plaintiff be given a rating of 3 on account of the plaintiff's performance as only offering part of the story. "The only way" that Haepers's suggested rating of 3 "could possibly be consistent" with his statements to the plaintiff, he avers, is if Haepers initially recommended to Beausoleil that the plaintiff be given a rating of 5 and only sent the suggestion of a rating of 3 after the two communicated and Beausoleil cajoled Haepers into lowering the rating. (Emphasis in original). Seen in this light, the plaintiff continues, "the only reason Mr. Beausoleil would have rejected Mr. Haepers' suggestion that Mr. Boykin be rated a '5' (given Beausoleil's lack of direct knowledge of Boykin's performance) would be if Beausoleil was being guided by his racial prejudice" — the same prejudice, the plaintiff suggests, that had been made manifest when Beausoleil uttered his statement upon seeing the plaintiff mopping up ice melt. (Emphasis in original).

This fact, he concludes, ensures that there is a genuine issue of material fact as to whether Beausoleil's proffered reason was pretextual.

We think that the plaintiff reads the record through rose-colored glasses. The plaintiff's argument might be a possibility, but it is not backed by the "definite, competent evidence," Mesnick, 950 F.2d at 822, that we regularly require in order to stave off the swing of the summary judgment ax. There are at least three reasons why this is so.

First, as the district court astutely noted, "[b]ecause Boykin's entire theory of liability hinges on Beausoleil — not Haepers — being the relevant decisionmaker, pretext must be measured from Beausoleil's perspective." Boykin, 2023 WL 4493514, at *3. Thus, even if Haepers believed that the plaintiff was deserving of a higher rating, that fact would not shed light on Beausoleil's view let alone enable a reasonable juror to find that his stated rationale was pretextual.

Second, the plaintiff fails adequately to grapple with the evidence that he himself relies upon. According to him, Haepers told him that Beausoleil thought that he was deserving of a rating of 3 because he was "making too much money." The plaintiff in turn argues that what Beausoleil meant was that he "believed that Mr. Boykin 'made too much money' for a Black manager." Yet, in making this claim, the plaintiff not only puts words into

- 10 -

Beausoleil's mouth but also ignores the possibility that Beausoleil was simply proffering a legitimate and nondiscriminatory view that the plaintiff's performance at work did not justify such a salary. Even if this view was "unwise or unreasonable," Woodward v. Emulex Corp., 714 F.3d 632, 639 (1st Cir. 2013) (quoting DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir. 1993)), it is a far cry from being a pretextual one, intended to conceal a true discriminatory view.

Third, the plaintiff places too much weight on the disparaging comment that Beausoleil made when the plaintiff was mopping up ice melt. Even assuming that this comment was racially tinged, our case law has firmly established that "[i]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent." Paul v. Murphy, 948 F.3d 42, 54 (1st Cir. 2020) (alteration in original) (quoting Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996)). Without more, this stray and facially ambiguous comment cannot serve as the sole predicate for a determination that Beausoleil's proffered reason for seeking to give the plaintiff a rating of 3 was pretextual. And here, there was no "more."

That ends this aspect of the matter. Given that the summary judgment record contains no evidence from which a rational jury could infer, without making insupportable inferences, that Beausoleil's reason for giving the plaintiff a rating of 3 was

actually a pretext for racial discrimination, we are unable to find any error in the district court's grant of summary judgment for the defendants.

## III

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.