# United States Court of Appeals
## For the First Circuit

No. 23-1970

KIMBERLY A. RIPOLI,

Plaintiff, Appellant,

v.

STATE OF RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, OFFICE OF
VETERANS SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Rikelman, Selya, and Lynch,
Circuit Judges.

Chip Muller, with whom Muller Law, LLC was on brief, for
appellant.
Paul Meosky, Special Assistant Attorney General, with whom
Katherine Connolly Sadeck, Assistant Attorney General, was on
brief, for appellee.

December 16, 2024

**SELYA**, **Circuit Judge**. Plaintiff-appellant Kimberly A. Ripoli claims that she experienced gender-based discrimination when she was terminated from her job as the Associate Director of the Rhode Island Office of Veterans Affairs (OVA). To right this perceived wrong, she sued the State of Rhode Island, Department of Human Services, Office of Veterans Affairs (the State) under Title VII of the Civil Rights Act of 1964 and various Rhode Island statutes. The district court granted summary judgment in favor of the State on all of the appellant's claims. After careful consideration, we vacate the district court's order on the appellant's disparate treatment claims. Inasmuch as the appellant does not address the district court's adverse rulings on her retaliation or hostile work environment claims, we leave intact the district court's order granting summary judgment on those claims.

**I**

We rehearse the facts in the light most favorable to the appellant, drawing all reasonable inferences to her behoof. See Rathbun v. Autozone, Inc., 361 F.3d 62, 64 (1st Cir. 2004).

The appellant is a decorated veteran of the United States Navy, having served in combat roles throughout several deployments. Her career also includes, among other extensive experience, serving as the medical department head at the Naval Operational Support Center and serving as a senior chief action

- 2 -

officer reporting directly to a Deputy Assistant Secretary of the Navy. After twenty-six years in the Navy, the appellant retired from her service in February of 2014.

The appellant became the Associate Director of the OVA in August of 2012. In this role, she oversaw a staff of approximately 260 employees and had responsibility for a budget of approximately $29,000,000. Neither party disputes that the appellant performed well in her role. See Ripoli v. Dep't of Hum. Servs., Off. of Veterans Affs., No. 17-225, 2023 WL 7920473, at *1 (D.R.I. Nov. 16, 2023). The appellant's supervisors and co-workers at the OVA knew that she was a female and lesbian.

The role of Director of the OVA was vacant between the time of its creation by statute in 2011 until the then-governor of Rhode Island appointed Kasim Yarn to the role in February of 2016. In that interim, the appellant supervised the OVA in her capacity as Associate Director.

A press release announcing Yarn's appointment stated that his mission at the OVA was to "build additional capacity to support veterans and military families." Upon his installation as Director, Yarn completed a needs assessment of the OVA. There is a dispute over whether this assessment was a specific type of analysis, known as a "Lean analysis" (which relies on robust supporting details to identify inefficiencies and waste in an organization).

As a result of his assessment, Yarn came to believe that the Associate Director role had certain duties duplicative of his role. In June of 2016, Yarn emailed senior leadership and State decisionmakers, stating that the OVA "must address a reorganization strategy that answers" the challenge of Rhode Island's aging veteran population. He included his Lean analysis, which indicated that the Associate Director job requirements and description were the same as those for the Director role. In Yarn's view, such redundancy had negative impacts on both budget and productivity. Yarn suggested a realignment of the OVA in order to heighten efficiency and effectiveness. This realignment would result, according to Yarn's email, in three structural changes: adding an Implementation Aide position, updating the Executive Nurse job description, and eliminating the appellant's position.

Yarn appended two attachments of note to his email: the first was a then-current organizational chart, indicating that — as Associate Director — the appellant served directly below Yarn. The second was a "Re-Organizational Chart." This latter chart did not include either the appellant or her role. Nor did it include a Strategic Planning, Policy, and Communications Administrator (SPPCA) role (more on that later). According to this chart, Yarn's suggested reorganization would result in six positions at an equal level of seniority, all of which would report directly to Yarn. At the time of Yarn's email, three of the positions were held by

heterosexual men and three were vacant. The chart also contemplated one subordinate leadership role. That position, too, was held by a heterosexual man. The appellant presented evidence that this email indicated to at least one official that Yarn was not anticipating additional changes to staffing in the near future; indeed, Yarn himself stated as much in a July 13, 2016 email.

Yarn testified that the only documents that aided him in his Lean analysis and his decision to eliminate the appellant's position were the job descriptions of the roles of Director and Associate Director. Yarn relied heavily on his assessment that the Associate Director job description was nearly identical to the Director's job description. Yarn did not ever discuss the appellant's accomplishments as Associate Director with her; he never reviewed her resume; and he was not aware of various aspects of her extensive experience.

In a later email from the Deputy Personnel Administrator regarding Yarn's proposed reorganization, the Deputy Personnel Administrator stated that there were no identified budget cuts requiring layoffs in the OVA's staff at the relevant time. Rather, the Deputy Personnel Administrator deferred to the Secretary regarding budgetary implications.

The appellant's termination was approved, and her last day of work was July 27, 2016. Withal, there is evidence that the

role of Associate Director was never formally eliminated and has remained vacant since July of 2016.

Michael Jolin is a heterosexual male who at the times of Yarn's arrival and the appellant's departure, served on the OVA's executive team as the Chief of Family Services. Unlike the appellant — who had supervised the OVA for nearly four years — Jolin had no management experience. At some point in 2016, Yarn initiated a process that culminated in the creation of a new position (the SPPCA). Jolin drafted a job description for the SPPCA position and sent it to Yarn on July 29, 2016 (two days after the appellant's final day of employment at the OVA).[1]

According to the draft, the SPPCA was to work directly under Yarn. Specifically, the SPPCA would "serve in a highly responsible legal, policy, and communications capacity to the Director in the overall planning and administration of all departmental activities." This role would work "under the administrative direction of the Director with considerable latitude for the exercise of independent judgment and initiative." On August 12, 2016, Yarn emailed State decisionmakers, attaching "updated job descriptions and paygrades" for Jolin and others.

---

[1] Jolin's initial July 29 draft job description titled this role, "Administrator for Strategic Communications, Policy, & Legal Services." By the time that Jolin was promoted into this role, it was titled the SPPCA. For ease in exposition, and because neither party raises an issue with this difference in formal nomenclature, we refer to this role at all times as the SPPCA.

This email included the SPPCA job description. Jolin was later hired into this position. There is evidence that the process by which Jolin was hired was not the normal process followed by the OVA: Jolin was parachuted into the position pursuant to a special purpose agreement.[2] According to an organizational chart dated September of 2017, Jolin served directly under Yarn as SPPCA. The appellant was not given the opportunity to be considered for this position.

The appellant sued the State in May of 2017. She alleged discrimination based on sexual orientation and gender under Title VII of the Civil Rights Act of 1964.[3] She also alleged violations of the Rhode Island Fair Employment Practices Act and the Rhode Island Civil Rights Act of 1990. See R.I. Gen. Laws Ann. §§ 28-5-1, 42-112-1.

Following discovery, the State moved for summary judgment on all claims. The district court granted the motion. This timely appeal followed.[4]

---

[2] A special purpose agreement is a vehicle by which various employment-related changes can be made, and it is a procedure not described in the OVA personnel rules.

[3] The appellant has since withdrawn her allegation of age discrimination. Moreover, she has not pursued her disability discrimination claim under the Rhode Island Civil Rights of People with Disabilities Act, R.I. Gen. Laws Ann. § 42-87-1, in this appeal.

[4] In this court, the appellant does not pursue either her retaliation or her hostile work environment claims. Consequently, we omit any further mention of those claims.

We review a district court's entry of summary judgment de novo. See Rathbun, 361 F.3d at 66. To prevail on summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Boykin v. Genzyme Therapeutic Prods., LP, 93 F.4th 56, 60 (1st Cir. 2024). "Once the moving party avers the absence of genuine issues of material fact," the burden shifts to the non-moving party to show that a genuine issue of material fact exists. Rathbun, 361 F.3d at 66.

The familiar McDonnell Douglas burden-shifting framework applies to the appellant's disparate treatment claims.[5] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); see also Boykin, 93 F.4th at 60. Under that framework, the plaintiff in a discrimination case first must make a prima facie showing of discrimination. See Boykin, 93 F.4th at 60. A prima facie case of discrimination requires the plaintiff to establish that she was a member of a protected class, that she was qualified for the job, that she suffered an adverse employment action, and that the adverse employment action transpired under circumstances giving

---

[5] The same framework also applies to the appellant's counterpart state law claims. See Casey v. Town of Portsmouth, 861 A.2d 1032, 1036 (R.I. 2004).

rise to an inference of discrimination. See Rinsky v. Cushman & Wakefield, Inc., 918 F.3d 8, 29 (1st Cir. 2019). "The burden of establishing a prima facie case of disparate treatment is not onerous." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981). "All that is needed is the production of admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination." Sanchez v. P.R. Oil Co., 37 F.3d 712, 719 (1st Cir. 1994).

Once the plaintiff carries her burden of showing a prima facie case, the burden of production shifts to the defendant, who must provide a legitimate, non-discriminatory reason for the adverse employment action. See Boykin, 93 F.4th at 60. As long as the defendant is able to put forth such an explanation, the burden then reverts to the plaintiff to show that the defendant's stated reason for the adverse action was a pretext for discrimination. See id. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (alteration in original) (quoting Burdine, 450 U.S. at 253).

Whether summary judgment is appropriate in any given instance depends on multiple factors, including the strength of

the plaintiff's prima facie case, the probative value of the proof of pretext, and any other appropriately considered evidence. See id. at 148-49. Generally — though by no means always — "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148. And in that event, a plaintiff need not necessarily "introduce additional, independent evidence of discrimination." Id. at 149.

**A**

Our inquiry begins with the appellant's prima facie case. Nobody seriously disputes that the appellant established the first three elements of her prima facie case: she is both female and lesbian, she was amply qualified for her role as Associate Director of the OVA, and she was terminated from that position. As to the fourth element of her prima facie case, she insists that a litany of factors, when viewed together, raise a genuine issue regarding whether she was discharged under circumstances giving rise to an inference of discrimination. For instance, the appellant was the only female and only gay employee on the OVA's executive team, and she was the only employee who was fired; there was no compelling impetus, budgetary or otherwise, to send her packing; the State had a continuing need for her work and skills; she was arguably replaced by a less-qualified heterosexual

- 10 -

male; and the State kept her in the dark about the availability of the SPPCA role.

Notwithstanding that the district court assumed that the appellant had established her prima facie case, the State insists that the appellant produced no evidence of discriminatory intent. It takes issue with characterizing the appellant and her former role as being "replaced" by Jolin, rather than as collateral damage arising out of the reorganization of the OVA and the elimination of her position. In support, the State declares that it did not appoint an Associate Director after the appellant was dismissed and argues that the Associate Director and the SPPCA role are sufficiently distinct that it cannot be said that Jolin replaced the appellant. Finally, the State disputes that the appellant was the only female member of the executive team.

Viewing the facts in the light most flattering to the appellant and drawing all reasonable inferences in her favor, we conclude that she has carried her burden of adducing facts from which a reasonable factfinder could conclude that she was discharged under circumstances supporting an inference of discrimination. To begin, there is a dispute regarding whether the appellant was the only female on the OVA's executive team. Yarn testified that during the time of his appointment through the end of July of 2016, he considered his executive committee to consist of the appellant, Jolin, a woman named Lynn Lavallee, and

- 11 -

three other men.  Other evidence, though — such as organizational charts indicating that Lavallee was not on the executive team — supports a finding that the termination of the appellant's employment left the OVA with an all-male executive team.  A reasonable factfinder could infer discrimination from the facts, taken most favorably to the appellant, indicating that the State retained an executive team comprised exclusively of heterosexual males and dismissed only the appellant during its reorganization of the OVA.  See Resare v. Raytheon Co., 981 F.2d 32, 43 (1st Cir. 1992).

Discrimination may also be inferred from the evidence presented that Yarn and the OVA had a continuing need for the appellant's services.  Mere days after she was terminated, Yarn announced the creation of a new role that — the appellant contends — provided assistance to the Director in much the same way that the Associate Director had.  See Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 59 (1st Cir. 2005) (explaining that replacement need not be specially designated as such to establish final element of prima facie case).  Yarn appointed Jolin to fill this role (the SPPCA position).  The evidence that the appellant's services were supplanted by services rendered by Jolin, a heterosexual male who was arguably less qualified than her to carry out the duties of this management role, also tends to support an inference of discrimination.  See id.  And the appellant presented

evidence that she was discharged without the opportunity to be considered for the SPPCA role. The bottom line is that a reasonable factfinder could infer that — though the State may have had a need for the appellant's services in the SPPCA role — the State was motivated by discrimination against the appellant because it discharged her instead. Mindful of the appellant's relatively light burden at this stage, we conclude that she established her prima facie case of discrimination, thereby raising an initial inference of discrimination.

**B**

Once the appellant made out her prima facie case, the burden of production shifted to the State to articulate a legitimate, non-discriminatory reason for terminating her employment. See Boykin, 93 F.4th at 60. To this end, the State argues that the district court hit the nail on the head when it concluded that the State had articulated such a reason: it ostensibly terminated the appellant's employment as part of a larger, legitimate reorganization. The appellant rejoins that the State's "vague" reason is not adequately supported and, thus, that the State did not carry its burden.

The State has the better of this argument. Yarn claimed that he found the appellant's Associate Director role to be redundant with his own role. He further claimed that he decided to eliminate the former role because of its negative impacts on

both budget and productivity.  These are legitimate, non-discriminatory reasons for abolishing the appellant's position and ending her employment.  See Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 422 (1st Cir. 1996).  By producing evidence of these facially legitimate reasons, the State has satisfied its initial burden at this stage of the analysis.  See Burdine, 450 U.S. at 256-57.

## C

Against this backdrop, the burden reverts to the appellant to produce evidence sufficient to show that the State's articulated reason for cashiering her was not its real reason but, rather, was merely a pretext for discrimination.  See Boykin, 93 F.4th at 60.  The district court concluded that the appellant had failed to carry her burden at this stage of the inquiry.  See Ripoli, 2023 WL 7920473, at *8-11.  We are not so sanguine.

The appellant first asserts that the district court erred when it required that she prove not just that the State's articulated reasons for terminating her employment were pretextual but also that the State's motive was discriminatory.  Relatedly, the appellant asserts that the district court committed an error of law when it held that the appellant could not rely on the same evidence to show both pretext and proof of discrimination. Building on this foundation, the appellant argues that she carried her burden of showing that there are genuine issues as to whether

- 14 -

the State's reasons for dismissing her were pretextual. In this regard, she questions the process by which the State eliminated her position, created an analogous position, and kept her in the dark as to the new opportunity. To bolster this argument, she asks us to draw inferences favorable to her both from the State's justifications for eliminating her role and from the differences between how she was treated and how similarly situated men were treated. The State responds that although discrimination may sometimes be inferred from pretext evidence, the district court did not err in finding that the evidence in this case fell short of supporting such an inference.

**1**

In examining these competing views, we start by addressing the appellant's burden. The district court cast this burden as a need to show "that there is a genuine dispute over whether (1) the articulated reason is pretextual . . . and (2) the true reason is discriminatory." Ripoli, 2023 WL 7920473, at *5. Although the district court did not demand any "smoking gun" evidence of discriminatory intent, id. (quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 58, 64 (1st Cir. 1999)), it explained that the appellant needed to present facts sufficient to allow a jury to find that the State's reason for terminating the appellant's employment was "not only a sham, but a sham intended to cover up the [State's] real and unlawful motive of discrimination," id.

(quoting Theidon v. Harvard Univ., 948 F.3d 477, 497 (1st Cir. 2020)); see id. at *12 (assuming that appellant had shown evidence of pretext, but granting summary judgment for State because of perceived lack of evidence connecting termination to protected classes).

To be sure, an ousted employee's "burden at this stage is often seen as comprising two separate tasks." Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 n.5 (1st Cir. 2000). Sometimes, though — depending on the specific facts of a given case — showing a dispute over whether the employer's true reason is discriminatory can be accomplished by showing a dispute over whether the employer's reason for taking the challenged action is pretextual. See Reeves, 530 U.S. at 147. Thus, the argument that a plaintiff who has shown pretext "must also provide additional evidence of discrimination beyond the prima face case" in order to defeat summary judgment "is simply wrong." Domínguez-Cruz, 202 F.3d at 430 n.5. It follows that the district court committed legal error when it held as much. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive." Reeves, 530 U.S. at 148-49. The upshot, then, is that "[a] jury may infer unlawful discrimination where there is (1) a prima facie case of discrimination and (2) 'sufficient evidence to find that the

- 16 -

employer's asserted justification is false.'" Rinsky, 918 F.3d at 28 (quoting Reeves, 530 U.S. at 148).

Of course, this conclusion "does not mean 'that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.'" Id. at 28-29 (emphasis in original) (quoting Reeves, 530 U.S. at 148). Whether summary judgment

> is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for [summary] judgment.

Reeves, 530 U.S. at 148-49. Consequently, the question before us is whether the appellant has identified enough evidence to enable a rational factfinder to infer that unlawful discrimination was a determinative factor in the State's termination of her employment.

We recognize that "there is no 'mechanical formula' for establishing pretext." Alston v. Town of Brookline, 997 F.3d 23, 45 (1st Cir. 2021) (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003)). "One size does not fit all, and the inquiry into pretext is the kind of inquiry in which 'everything depends on the individual facts.'" Id. (quoting Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000)). Our next step, then, is to examine the record through that lens.

The State has proffered evidence that Yarn predicated his decision to terminate the appellant's employment on both budgetary and efficiency concerns. But the appellant has presented evidence that raises questions as to whether these asserted justifications were — separately or in combination — the motivating factors for this phase of the reorganization. Given this state of the record and the fact that the district court was ruling on a summary judgment motion, it is grist for the factfinder's mill to determine whether or not the asserted justifications are pretextual.

As to the budgetary justification, State leaders conceded that there were no budgetary imperatives that required eliminating the appellant's position. A reasonable factfinder, relying on evidence such as the fact that Yarn eliminated the appellant's position at a time when the OVA was "confronting a growing challenge as a result of a rapidly aging veteran population," could find that the State's stated reason for firing her was pretextual. See Smith, 76 F.3d at 422 (reasoning that employers who "selectively clean[] house cannot hide behind convenient euphemisms such as 'downsizing' or 'streamlining'"); Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc., 999 F.3d 37, 57-58 (1st Cir. 2021) (explaining that while employers may reduce expenses through reductions in force,

reorganization/improved-efficiency rationales may also be pretext).

As to the efficiency rationale, Yarn attempted to justify the elimination of the appellant's position by branding it as duplicative of his. Consequently, retaining both positions would impede efficiency. But the appellant has produced evidence of the two job descriptions, which — when compared — create a genuine issue regarding whether the two roles were as similar as Yarn would have it.

According to its job description, the Associate Director assisted the Director in performing certain duties, but was not independently responsible for performing the same duties. Providing assistance to a superior so that the superior can carry out a duty does not necessarily impose upon the subordinate that same duty. Here, moreover, the Associate Director had her own responsibilities separate and apart from simply assisting the Director. These included representing the State and the OVA in matters involving the National Association of State Veterans' Homes and helping to shape public relations involving veterans' service organizations and the Department of Human Services (DHS). Further undermining the State's assertion that the roles were redundant is the fact that Yarn reassigned some of the duties of Associate Director to other roles that were not eliminated.

A comparison of the OVA and DHS is instructive in another way as well. The record contains evidence that DHS employed approximately seventeen individuals in associate or assistant director roles. This evidence — that another state department saw fit to employ individuals in roles similar to the appellant's Associate Director role — casts further doubt on the State's efficiency justification for eliminating the appellant's role.

So, too, the appellant's evidence that Yarn formally created the new SPPCA role two days after the appellant's departure from the OVA raises an inference of pretext regarding the State's "efficiency" rationale. There is evidence of some significant overlap between the Associate Director's role and the SPPCA role. For instance, the SPPCA was responsible for providing planning and policy assistance to Yarn in carrying out Yarn's responsibilities as Director. That same work was part and parcel of the Associate Director's role.

On this record, a reasonable factfinder could infer that the State's creation of the SPPCA position simply recreated the essence of the Associate Director position in a different guise. Such a finding, in turn, could lead a reasonable factfinder to conclude that the State's elimination of the Associate Director position due to efficiency concerns was pretextual.

Contrary to the State's averment, the facts at play in both Dunn v. Trustees of Boston University, 761 F.3d 63 (1st Cir.

- 20 -

2014), and <u>Weston-Smith</u> v. <u>Cooley Dickinson Hospital</u>, 282 F.3d 60 (1st Cir. 2002), are sufficiently different such that our holdings in favor of the employers in those cases are inapropos. See <u>Dunn</u>, 761 F.3d at 75; <u>Weston-Smith</u>, 282 F.3d at 70. In <u>Dunn</u> — as part of a larger reorganization of the plaintiff's working group — the employer consolidated the plaintiff's role with another employee's role, gave the combined role to the other employee, and laid off the plaintiff. See 761 F.3d at 66-67. In <u>Weston-Smith</u>, we once again dealt with a reorganization of a larger team. See 282 F.3d at 68. We reasoned that evidence that the "reorganized jobs encompassed functions of [the plaintiff's] former job[]" was not alone indicative of pretext, because an employer's reshuffling of functions can lead to greater efficiency in the context of reorganizing an entire team. <u>Id.</u> at 69. Here, however — unlike in <u>Dunn</u> and <u>Weston-Smith</u> — the appellant introduced evidence to show that the Associate Director role was discharged in name only to clear the way for her ouster. Indeed, a reasonable factfinder could find that the appellant's role was simply recreated as the SPPCA role. Put another way, a reasonable factfinder could find that the State's shuffling of duties from the Associate Director role to the newly created SPPCA role was not only "[]surprising," <u>id.</u>, but also pretextual.

To make the cheese more binding, the process of creating the SPPCA position may itself be viewed as evidence of pretext.

Yarn's initial email announcing his plan to eliminate the appellant's position indicated to at least one State official that Yarn did not anticipate further changes to staffing at the OVA. And Yarn himself stated — as late as July 13, 2016 — that he foresaw no additional staffing changes. But two days after the appellant's departure, Jolin sent Yarn a draft job description for a new role. Of course, creating a new role could qualify as a staffing change of the sort that Yarn claimed to be unanticipated — but such a rationale seems dubious since the appellant was not given an opportunity to apply for this role. Instead, Jolin was eventually hired into the SPPCA role through a special purpose agreement, an atypical procedure not described in the OVA personnel rules. A reasonable factfinder could view these facts as Yarn manipulating the State's hiring process to the appellant's detriment and, therefore, as pretext. See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 52 (1st Cir. 2010).

The fact that the appellant's ouster resulted in an all-male executive team is additional evidence supporting a finding of pretext. See Resare, 981 F.2d at 43 (finding pretext when — despite justifying female employee's discharge on budgetary and policy grounds — decisionmaker admitted to not researching the cost-saving potential of discharging other, allegedly less qualified male employees). The State's professed desire to flatten the OVA's reporting structure cuts in the same direction. After

- 22 -

all, the SPPCA position sits in roughly the same organizational position as the Associate Director position and, thus, does not flatten the OVA's reporting structure. This additional evidence supports the appellant's claim of pretext.

We add, moreover, that the appellant has raised a genuine issue of material fact regarding Yarn's alleged Lean analysis (which purportedly inspired the State's elimination of the Associate Director position). The appellant adduced evidence that while Lean analyses are structured to rely on substantial information regarding an entire business, the only documents that Yarn used in his Lean analysis were the written job descriptions for his position and for the appellant's position. And regardless of whether Yarn's analysis technically qualified as a Lean analysis — a matter on which the parties do not agree — the appellant has presented evidence that Yarn's analysis was severely deficient. For example, Yarn did not meet with the appellant regarding her accomplishments as Associate Director, and he was totally unaware of various aspects of her extensive experience.

On this record, a reasonable factfinder could find both that Yarn's assessment was cursory and that his effort to complete a thorough Lean analysis was at best half-hearted. Based on those findings, the factfinder could conclude that Yarn's justifications for eliminating the appellant's position were pretextual.

- 23 -

**3**

If more were needed — and we doubt that it is — the appellant has offered evidence sufficient to create a genuine issue of material fact as to whether Jolin, an employee arguably "similarly situated to [her] in all relevant respects[, was] treated differently" than the appellant. Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999). The State counters that Jolin is not a valid comparator because he and the appellant had sufficiently different jobs, education, and skillsets, such that any differential treatment cannot serve as evidence of pretext.

The State's isthmian view of comparability is at odds with our precedent. In the context of offering comparator evidence to raise an inference of discrimination in a disparate treatment case, "similarity, rather than identicality, provides the essential requirement for an analogy." Id. at 22. "When evaluating such comparators, '[r]easonableness is the touchstone: while the plaintiff's case and the comparison cases that [she] advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." Diaz v. City of Somerville, 59 F.4th 24, 32 (1st Cir. 2023) (quoting Conward, 171 F.3d at 20). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Conward, 171

F.3d at 20 (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)). In the last analysis, "[e]xact correlation is neither likely nor necessary, but the cases must be fair congeners." Id. (quoting Dartmouth Rev., 889 F.2d at 19).

The question here is whether a reasonable factfinder could find that the appellant and Jolin were similarly situated in their roles such that they can appropriately be compared for purposes of the appellant's disparate treatment claim. We think that this question demands an affirmative answer.

Reviewing the record with care, we conclude that the appellant has offered evidence that presents a question of fact as to whether she and Jolin were "similarly situated . . . in all relevant respects." Id.; see Cocuzzo v. Trader Joe's E. Inc., 121 F.4th 924, 933 n.8 (1st Cir. 2024) (concluding "aptness" of proposed comparators is question of fact for factfinder in this context). To start, the appellant and Jolin both worked on Yarn's small executive team and — at all relevant times — they both reported directly to Yarn. Both of them were impacted by Yarn's reorganization of the OVA. And although their roles were different in certain respects, the court below identified evidence that members of Yarn's executive team performed tasks beyond the duties stated in their job descriptions. See Ripoli, 2023 WL 7920473, at *7. As a result, the State's argument that the appellant and Jolin

are not valid comparators because their roles were not identical does not carry the day. See id. at *7-8.

Here, moreover, the appellant presented evidence from which a reasonable factfinder could conclude that Jolin was treated more favorably than the appellant. Around the same time that Yarn eliminated the appellant's position, he oversaw the creation of a new role that overlapped at least in part with the appellant's former position. Without telling the appellant of this new role or providing her with an opportunity to apply for it, Yarn promoted Jolin into the role. From this sequence of events, a reasonable factfinder could conclude that the State treated the appellant differently than Jolin, a heterosexual male, throughout its reorganization, especially with respect to the SPPCA position. And this differential treatment was to the appellant's detriment. Consequently, the evidence chronicling the differential treatment of the appellant as compared to Jolin's raises a genuine issue of material fact with respect to whether the State's asserted justifications for dismissing the appellant were pretextual.[6]

**4**

To be sure, there is no smoking gun. No one piece of evidence, taken in isolation, suffices to prove disparate

---

[6] The appellant also contends that another OVA employee, Johnathan Rascoe, is a valid comparator. Because the evidence discussed above is sufficient to thwart the swing of the summary judgment ax, we take no view of this contention.

treatment. We have recognized, however, that in the evaluation of evidentiary presentations, the whole is sometimes greater than the sum of the parts. See, e.g., Harrington v. Aggregate Indus. Ne. Region, 668 F.3d 25, 34 (1st Cir. 2012). This is such a case. The appellant has provided sufficient evidence from which a rational factfinder could infer that unlawful discrimination was a determinative factor in her ouster. She has therefore sustained her burden at the final stage of the McDonnell Douglas framework, and the State is not entitled to summary judgment on her disparate treatment claims.

### III

We need go no further. At each stage of Yarn's reorganization and the ensuing creation of the SPPCA role, the appellant was either kept in the dark, outright disadvantaged, or both. Although a factfinder could find that the outcome for the appellant was merely collateral damage resulting from appropriate State action, such a finding is not compelled by the evidence. A factfinder could just as easily conclude that the appellant's discharge was the product of discrimination. This is the classic situation, then, in which a factfinder — and not a judge acting at summary judgment — should weigh the evidence and make a final determination. See Rossy v. Roche Prods., Inc., 880 F.2d 621, 626 (1st Cir. 1989). For the reasons elucidated above, we vacate the district court's judgment in part; that is, insofar as that

judgment relates to the appellant's disparate treatment discrimination claims (state and federal). We leave undisturbed, however, the summary judgment in favor of the State on the appellant's retaliation and hostile work environment claims. See supra note 1. Finally, we take no view as to the State's Eleventh Amendment defense, see Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999), inasmuch as the district court has not yet ruled on that defense, see, e.g., Town of Barnstable v. O'Connor, 786 F.3d 130, 143-44 (1st Cir. 2015). Here, moreover, the outcome of the State's defense will turn in part on the Rhode Island Supreme Court's answer to the question recently certified to it in Parente v. Lefebvre, ___ F.4th ___ (1st Cir. 2024) [No. 24-1098], of "whether discrimination claims under RICRA are covered by" the State Tort Claims Act's sovereign immunity waiver, id. at ___ [No. 24-1098, slip op. at 13-14]. We remand for the entry of a revised judgment and for further proceedings consistent with this opinion. Costs shall be taxed in favor of the appellant.

**So Ordered**.